UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JON FLOYD CRUNK and
PAULA JANE CRUNK,

Case No. 23-10235-t13

Debtors.

## OPINION

Before the Court is the first fee application of Debtors' chapter 13 counsel, New Mexico Financial and Family Law, P.C. ("Counsel"). In the fee application, Counsel seeks allowance of $11,020 in professional fees, $353[1] in costs, and applicable New Mexico gross receipts tax. Because the fees sought are significantly higher than the average fee application for a chapter 13 case in this district, the Court, sua sponte, reviewed the application. Having done so, the Court will allow $5,890 in fees, $353 in costs, and applicable gross receipts tax.

A.  Facts.

The Court finds:[2, 3]

In March of 2023, Debtors retained Counsel to file this case and provided a $3,000 retainer. Attorneys Don Harris and Dennis Banning, paralegal Jill Stevenson, and a legal assistant worked on the case. Counsel filed the case on March 27, 2023. The initial filings included the petition, disposable income calculation, schedules, statement of financial affairs, plan, and a disclosure of

---

[1] All dollar figures are rounded to the nearest dollar.
[2] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[3] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

compensation. In the disclosure, Counsel certified that Debtors agreed to pay Counsel $250 per hour for attorney work done in the case.

Debtors filed an amended plan on April 13, 2023, which the Court confirmed on June 26, 2023.

Counsel filed the fee application on August 9, 2023, seeking allowance of $12,227 in fees, costs, and tax. This is more than double the amount sought through confirmation in a typical chapter 13 case.

On January 9, 2024, the Court held a status conference in the case. At the conference the Court pointed out to Counsel that the treatment of the Small Business Administration's ("SBA's") secured claim in Debtors' amended plan was wrong. The plan purported to set aside an SBA judgment lien as impairing Debtors' homestead exemption. The SBA has a junior mortgage on Debtors' house, however, not a judgment lien. If the SBA's mortgage is wholly "under water," as Debtors allege, the proper treatment would have been to bifurcate SBA's claim and "strip" the lien pursuant to § 506. The district's form chapter 13 plan includes such treatment in Part 4, paragraph 4.2(A). Counsel's use of Part 8 of the form plan ("Lien Avoidance-Other than Mortgages") was a mistake. The Court understands the problem is now being fixed by the SBA voluntarily releasing its mortgage.

Counsel filed an amended disclosure of compensation on January 26, 2024. The amended disclosure certifies:

> For legal services, I have agreed to accept and received a retainer of.......... $3,000
> The undersigned shall bill against the retainer at an hourly rate of.......................$0.
> [Or attach firm hourly rate schedule.]

Attached to the amended disclosure is the following, presumably Counsel's rate schedule:

> Don Harris, Attorney............................................................$350
> Dennis Banning, Attorney....................................................$350

Paralegal or Law Clerk..........................................................$150
Legal Assistant....................................................................$100

For chapter 13 practitioners, an hourly rate of $350 would be the highest in the district.

The hours spent and the professional fees billed by Counsel during the application period can be categorized as follows:

| Category | Attorney time | Paralegal time | Combined fees |
|---|---|---|---|
| Preparing schedules, SOFA, and related documents | 1.3 | 4.4 | $ 1,115 |
| Clerical work | 0.7 | | $ 245 |
| Review Proofs of Claim | 2.3 | | $ 805 |
| Drafting Plan and First Amended Plan | 1.5 | 0.6 | $ 615 |
| Emails | 11.7 | | $ 4,095 |
| Second Amended Plan (Never Filed) | 0.7 | | $ 245 |
| Receive and review notices, transfer of claims, notice of appearance | 0.7 | | $ 245 |
| Draft and redraft Confirmation Order | 0.8 | | $ 280 |
| Review and respond to Objections | 1.2 | | $ 420 |
| Prep and Attend Hearings/341 | 0.5 | | $ 175 |
| Fee application | 1.1 | 0.4 | $ 445 |
| Case Administration | 0.2 | 3.3 | $ 550 |
| Client Meetings/Phone calls | 4.2 | | $ 1,470 |
| Miscellaneous | 0.9 | | $ 315 |
| **Total** | **27.8 hrs.** | **8.7 hrs.** | **$ 11,020** |

B.  General Requirements for Debtor Attorney Fee Allowance in Chapter 13.

Compensation of counsel for chapter 13 debtors is governed by § 330(a)(4)(B),[4] which provides:

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

---

[4] Unless otherwise indicated, all statutory references are to 11 U.S.C. (the "Bankruptcy Code").

This subsection was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994.[5]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) [disclosure of] compensation paid or agreed to be paid pursuant to section 329, and 2) . . . approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales,* 621 B.R. 903, 922 (Bankr. D. Kan. 2020), quoting *In re Gorski,* 519 B.R. 67, 71 (Bankr. S.D.N.Y. 2014).

Compensation generally can include reimbursement of expenses advanced, e.g., filing fees, witness fees, and deposition costs. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir. 2019).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *see also In re Cooke,* 2020 WL 6821730, at *3 (Bankr. D. Ariz.) (to the same effect, citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995)). "This burden is not to be taken lightly given that every dollar expended on legal fees results i[n] a dollar less that is available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014); *see also In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (same); *In re Hotel Assoc., Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981) (same).

"The estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought." *In re Chas. A. Stevens & Co.*, 105 B.R. 866, 872 (Bankr. N.D. Ill. 1989)); *see also*

---

[5] The Reform Act also deleted the language "or to the debtor's attorney" from § 330(a)(1). Until then, § 330(a)(1) had included the debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 case could only be compensated under § 330(a)(4)(B).

*Applications of Kurtzman*, 220 B.R. 801, 804 (Bankr. S.D.N.Y. 1998), *aff'd sub nom. In re Kurtzman*, 220 B.R. 538 (S.D.N.Y. 1998) (quoting *Stevens*); *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 886 (Bankr. W.D. Ky. 1996) (same).

C. <u>Determining How Much Compensation Should be Allowed</u>. To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (to the same effect); and *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (discussing the "reasonableness" requirement).

1. <u>Actual Services</u>. Compensation can only be allowed for services actually performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered").

2. <u>Necessary Services</u>. Allowance is limited to "services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case." *In re Schupbach Investments, LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2014) (unpublished); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same, quoting *Schupbach*). In chapter 13 cases, the benefit can be to the debtor rather than to the estate. *See, e.g., In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); and *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) represents "an exception to the general rule that professionals' service fees are compensable only to the extent that they benefit the estate."). However, to be compensable, the representation of the debtor must be "in connection with the bankruptcy case." § 330(a)(4)(B).

Clerical work is not compensable as a "necessary" service rendered by a professional person seeking allowance of fees under § 330(a). *See, e.g., Guajardo*, 2020 WL 762828, at *4 ("While necessary in every legal proceeding, clerical work cannot reasonably be passed onto clients or the estate and should instead be absorbed by the firm as overhead."); *In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991) (same); *In re Lady Baltimore Foods, Inc.*, 2004 WL 2192368, at *1 (Bankr. D. Kansas) (clerical tasks are not compensable); and *In re Guzman*, 2009 WL 607401, at *1 (Bankr. D.N.M.) (same, citing *CF&I*).

3. <u>Reasonable Compensation</u>. Finally, compensation for actual and necessary services must be reasonable.

　　a. <u>The § 330(a)(3)/*Johnson* factors</u>. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

> (1) The time and labor required;

(2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The "undesirability" of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

488 F.2d at 717-19. For the fee application, the Court weighs the § 330(a)(3) and *Johnson* factors as follows:

| Factor | Discussion |
| --- | --- |
| § 330(a)(3)(A): Time spent | Counsel spent more time on this case than is typical for a chapter 13 case in this district. Counsel billed about 36.5 hours, pre-confirmation. A typical case takes about 20 hours through confirmation. |
| § 330(a)(3)(B): Rates charged | Mr. Harris, Mr. Banning, and Ms. Stevenson are experienced professionals. They billed $350, $350, and $150 per hour, respectively. If allowed, $350 per hour would be the highest rate charged by a chapter 13 lawyer in this district. $250 per hour is more typical. |
| §330(a)(3)(C): Necessary/beneficial | Most of the work performed was necessary and beneficial. However, some of the work was unnecessary. Furthermore, the amended plan contains a significant mistake that Counsel was required to fix after confirmation, i.e., the SBA's junior mortgage on Debtors' house was improperly treated as a judgment lien. Had this mistake not been caught by the Court and fixed, Debtors' house would have been encumbered by an unanticipated mortgage after completion of the chapter 13 plan payments. |
| § 330(a)(3)(D): Timeliness | The work was timely. |
| § 330(a)(3)(E): Skill/experience | Mr. Harris and Mr. Banning are experienced chapter 13 lawyers. Ms. Stevenson is an experienced bankruptcy paralegal. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases | The rates charged are more than the rates of similarly experienced and skilled attorneys for nonbankruptcy work. As discussed elsewhere, the Court will reduce the attorney hourly rate to $250. |

| | |
|---|---|
| *Johnson* factor ("JF") 1: Time and labor required? | The time spent on this case was nearly twice the average. |
| JF 2: Novelty and difficulty of the questions? | It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult. |
| JF 3: Skill requisite to perform the legal service properly? | Counsel's professionals have the requisite skills. |
| JF 4: Preclusion of other employment due to acceptance of the case? | There is no evidence that the Debtors' bankruptcy case precluded Counsel from other work. |
| JF 5: Customary fee? | In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000 in attorney and paralegal fees, plus costs and tax. By any reasonable measure, Counsel's fees in this case are much higher than the fees customarily charged for similar cases. |
| JF 6: Whether the fee is fixed or contingent? | The hourly rates charged by Counsel were certified to be $250 when the case was filed. Counsel cannot increase its hourly rate *ex post facto*, particularly without clear evidence that the initial disclosure was an innocent mistake. |
| JF 7: Time limitations imposed by the client or circumstances? | There were no significant time limitations in this case. |
| JF 8: Amount involved and results obtained? | With one exception, Counsel obtained fair results for Debtors. The exception, discussed above, is the mistake in handling SBA's junior mortgage on Debtors' house. The Court understands that the mistake is being corrected. There were overdue business tax returns that Counsel was able to help Debtors provide. There are $588,250 in total claims, which includes $366,612 in secured claims and $9,902 in priority claims. This is not an unusually large or complicated case. The business tax issues may have caused some work not required in an average chapter 13 case, but the rest of the case was standard. |
| JF 9: Experience, reputation, and ability of the consultant? | Counsel's professionals are experienced in chapter 13 work. |
| JF 10: Undesirability of the case? | There is no indication that this case was undesirable. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |
| JF 12: Awards in similar cases? | The attorney and paralegal fees charged for a "typical" chapter 13 case in this district are about $5,000 for pre-confirmation work. |

      b.      <u>Hourly rate</u>. The determination of a reasonable hourly rate must be made on a case-by-case basis, taking into account the complexity of the case and any other relevant factors. *In re Sharp,* 367 B.R. 582, 584 (Bankr. E.D. Mich. 2007). A complicated chapter 13 case could

merit Counsel charging more that the "going" customary hourly rate in this district. *In re Atwell*, 148 B.R. 483, 490 (Bankr. W.D. Ky. 1993); *see also In re Romero*, 2010 WL 964209, at *4 (Bankr. D.N.M.) (reasonableness of debtor's counsel's hourly rate depends in part on the complexity of the case); and *In re Heise*, 436 B.R. 143, 151 (Bankr. D.N.M. 2010) (counsel's proposed hourly rate is not justified because the case was not complex). Here, Counsel's $350 hourly rate is not justified because the case is not complex. Any number of chapter 13 bankruptcy attorneys in this district, all of whom charge $250 or less per hour, could have handled the case.

Furthermore, Counsel should not be allowed to charge $350 per hour. Section 329(a) provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Counsel's initial fee disclosure certified that Debtors had agreed to pay Counsel $250 per hour for attorney work done on the case. Despite that, billing entries from March 2, 2023, onward reflected a $350 hourly rate. The conflict between the certification and the fee bills is obvious. Is the certification, presumably made under penalty of perjury, false? Or are all the billing entries wrong?

> The fee disclosure obligations are mandatory, not optional. See *Kravit, Gass & Weber, S.C. v. Michel* (*In re Crivello*), 134 F.3d 831, 836 (7th Cir. 1998) ("[C]ounsel who fail to disclose timely and completely ... proceed at their own risk because failure to disclose is sufficient grounds to ... deny compensation."). The bankruptcy court exercised its sound discretion in sanctioning Peraica with complete disgorgement.

*In re Dordevic*, 62 F.4th 340, 342 (7th Cir. 2023).

Counsel's amended disclosure of compensation, filed months after its fee application, did not solve the problem. The amended disclosure seems to be an attempt to disclose Debtors' pre-

petition agreement to pay Counsel $350 per hour, not $250.[6] But the Court cannot tell which disclosure is accurate. If Debtors agreed to pay attorneys $350 per hour when they retained Counsel, but Counsel mistakenly disclosed $250 an hour, then Counsel should have explained the mistake and attached relevant portions of the engagement agreement to the amended disclosure. An *ex post facto* certification purporting to increase in the agreed-upon hourly rate by $100, without explanation, is insufficient. As the Seventh Circuit held in *Dordevic*, "Nothing in this framework provides leeway for partial or incomplete disclosure. Plain and simple, attorneys must inform the bankruptcy court of their compensation and promptly update the filing if their fees change." 62 F.4th at 342. Although the Court cannot tell exactly what went wrong, Counsel has not discharged its obligation to give complete, accurate disclosure of the compensation Debtors agreed to pay.

In the Tenth Circuit, the default sanction for inadequate disclosure is denial of all fees, unless there is a good reason not to. *In re Stewart*, 970 F.3d 1255, 1267 (10th Cir. 2020); *see also In re Vann*, 986 F.2d 1431, at *2 (10th Cir. 1993) (unpublished) ("Clearly, failure to comply with the Bankruptcy Rules may justify a bankruptcy court's denial of attorney fees. *Anderson,* 936 F.2d at 204; *In re Maui 14K, Ltd.,* 133 B.R. 657, 661 (Bankr. D. Haw. 1991); *In re Crimson Inv., N.V.,* 109 B.R. 397, 401 (Bankr. D. Ariz. 1989)."). If Debtors had initially agreed to the $350 hourly rate but Counsel disclosed a $250 hourly rate, then the disclosure was materially wrong. On the other hand, if Debtors initially agreed to a $250 hourly rate, Counsel's amended disclosure of a $350 hourly rate would be false. Either way, Counsel's disclosures were inadequate.

---

[6] The amended disclosure is confusing. It states: "The undersigned shall bill against the retainer at an hourly rate of $0 [Or attach firm hourly rate schedule]." A rate schedule is attached. If Counsel's intent was to charge Debtor at the rates in the rate schedule, why did Counsel put $0? At a continued status conference held February 6, 2024, the Court called Counsel attention to the error. Counsel promised to fix the mistake promptly. To date, he has not done so.

While denial of all fees is the default sanction, the Court will limit the sanction to the reduction of fees discussed in this opinion, including the reduction of the attorney hourly rate to $250. Given the facts, this is a lenient ruling.

        c.        <u>Time and Labor Required</u>. Some of the time charged in this case is excessive. For example, in *Heise* the Court found that one hour was a reasonable amount of time to prepare a fee application. 436 B.R. at 147. Counsel billed 1.5 hours. As Counsel keeps contemporaneous time records and prepares monthly invoices, all that is required is to compile the invoices for a fee application. *Id.* No extensive drafting is needed.

More significantly, Counsel billed $4,095 (11.7 hours) for emails. This is an excessive amount of time for email. Added to the $1,470 (4.2 hours) billed for client meeting and phone calls, Counsel billed more for meetings and correspondence than most lawyers bill in total fees for pre-confirmation work.

    4.        <u>A reasonable fee</u>. All the work billed for was actually done. Some, however, was unnecessary. First, Counsel billed 0.7 hours drafting a second amended plan that was not filed. The work did not benefit of the estate or the Debtor and was unnecessary. Second, Counsel billed 0.7 hours trying to coordinate calls or meetings. Such clerical tasks are not compensable and therefore considered unnecessary.[7]

Weighing the § 330(a)/*Johnson* factors after deducting fees for unnecessary work, the Court finds that the remaining requested fees are unreasonably high for the services provided and the results obtained. Adjusting for excessive work, clerical work, and nonbeneficial work results

---

[7] "Time spent on these clerical tasks is not compensable. If Counsel's attorneys choose to do their own scheduling of client meetings, Zoom calls, and the like, they must not bill for it." *In re Sepulvida*, 2023 WL 6964111, at *5 (Bankr. D.N.M. ); *see also In re DeKeyzer*, 2021 WL 1344715, at *4 (Bankr. D.N.M.) (same); and *In re Maldonado*, 2024 WL 218255, at *4 (Bankr. D.N.M.) (same).

in 27.1 compensable hours, of which 18.4 are attorney hours. At $250 per hour for attorney work, the total allowable fees are $5,980. The requested costs will be allowed.

## Conclusion

Once the mistake about SBA's secured claim is fixed, Counsel will have obtained a fairly good result for Debtors. Considering the time spent and the rate charged, the Court concludes that fees of $5,980 are reasonable. A separate order will be entered consistent with this opinion.

_____
Hon. David T. Thuma

Entered: February 26, 2024
Copies to: electronic notice recipients